**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **RONALD W. STONE, individually and as judgment creditor and holder of certain rights of CLIFTON MYERS FINANCIAL ADVISORY, INC. AND CLIFTON MYERS,** *Plaintiff* § § § § § § § | |
| **v.** § § § | **Case No. 1:21-CV-00960-LY** |
| **NATIONWIDE MUTUAL INSURANCE CO. d/b/a NATIONWIDE INSURANCE, NATIONAL CASUALTY COMPANY, WM. G. UHL AGENCY, INC., PROFESSIONAL AGENTS RISK PURCHASING GROUP, INC., and BENNIE SMITH,** *Defendants* § § § § § § § § | |

**O R D E R**

Before the Court are Plaintiff's Motion for Jurisdictional Discovery and to Extend the Deadline to Respond to Defendant Bennie Smith's Motion to Dismiss, filed November 24, 2021 (Dkt. 14); Defendant Professional Agents Risk Purchasing Group, Inc. d/b/a National Association of Professional Agents' Response to Plaintiff's Motion for Jurisdictional Discovery and to Extend the Deadline to Respond to Defendant Bennie Smith's Motion to Dismiss, filed December 1, 2021 (Dkt. 15); and Defendant Bennie Smith's Response to Plaintiff's Motion for Jurisdictional Discovery and to Extend the Deadline to Respond to Defendant Bennie Smith's Motion to Dismiss, Subject to Bennie Smith's Motion to Dismiss Pursuant to Rule 12(b)(2), filed December 1, 2021 (Dkt. 16). On December 1, 2021, the District Court referred the Motion to the undersigned Magistrate Judge for resolution, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas. Dkt. 17.

## I. Background

On November 29, 2018, Plaintiff Ronald Stone brought a Financial Industry Regulatory Authority ("FINRA") arbitration action against his investment advisor, Clifton Myers, and his firm, Clifton Myers Financial Advisory, Inc., for allegedly mismanaging his retirement portfolio. Plaintiff's First Amended Original Petition (Dkt. 1-2) ¶¶ 11-12. Myers had a professional liability insurance policy issued by Defendant Nationwide Insurance ("Nationwide") on behalf of Defendant National Casualty Company ("NCC") that provided up to $1 million for covered claims. *Id.* ¶ 13. Myers obtained the policy through Defendant Professional Agents Risk Purchasing Group, Inc. d/b/a National Association of Professional Agents ("NAPA") and its agents. *Id.*

After Stone filed the arbitration action, Myers notified his insurer of the arbitration and submitted a claim within his policy period. *Id.* ¶ 14. He consulted with NAPA agents, including Defendant Bennie Smith, regarding the claim submission and coverage process. *Id.* ¶ 15. Neither Smith nor any other NAPA agent informed Myers that "he needed to submit the claim in some different manner for Nationwide to consider the claim." *Id.* In October 2019, Nationwide and its affiliates failed to renew Myers' coverage, causing the policy to lapse. *Id.* ¶ 16. Two months later, Nationwide notified Myers that it would not cover the FINRA arbitration because Myers "submitted the claim the wrong way" by sending it to the wrong person. *Id.* Nationwide later informed Myers that it denied the claim because it was outside the policy period. *Id.*

On October 20, 2020, the FINRA arbitration panel issued a unanimous award for Stone, granting him compensatory damages, attorney's fees, costs, and post-judgment interest. *Id.* ¶ 17. On March 17, 2021, Stone obtained a final judgment consistent with the arbitration award in state court. *Id.* ¶ 18. The state court subsequently entered a Turnover Order granting Stone all rights that Myers and his firm possessed "concerning any wrongful denial of insurance coverage or claims made the basis of the Arbitration Award." *Id.* Specifically, the Turnover Order provided that:

> Plaintiff in this cause is entitled to the right to any cause of action Defendants Clifton Myers Financial Advisory, Inc. and Clifton Myers, might have against any liability insurance carrier, as well as any agents, representatives, and affiliates, . . . including but not limited to Nationwide on behalf of National Casualty Company (Nationwide) and the Uhl Agency, whether that cause of action is based upon contract, tort, statute, or otherwise.
>    . . . Plaintiff is further entitled to such causes or causes of action which might be by virtue of the Texas Deceptive Trade Practices Act or Articles 541 and 542 of the Texas Insurance Code.

Dkt. 8 at 33.

On September 13, 2021, Stone, individually and as judgment creditor of Myers and his firm, filed this suit against Nationwide, NCC, and Wm. G. Uhl Agency Inc. *Stone v. Nationwide Mut. Ins. Co.*, No. 21-1491-C26 (26th Dist. Ct., Williamson Cnty., Tex. Sept. 13, 2021); Dkt. 1-1 at 4. Stone later amended his petition to add NAPA and Smith as defendants. Dkt. 1-2 ¶¶ 5-6. Stone alleges that Defendants breached the insurance contract with Myers by failing to provide coverage for the FINRA arbitration claim. *Id.* ¶ 20. Stone also asserts claims for fraud, fraudulent inducement, fraud by non-disclosure, negligent misrepresentation, and violations of the Texas Deceptive Trade Practices Act ("DTPA") and Chapter 541 of the Texas Insurance Code. *Id.* ¶¶ 22-34. Stone later dismissed Defendant Wm. G. Uhl Agency Inc. from the suit. Dkt. 1-4 at 2. On October 25, 2021, Nationwide and NCC removed the case to federal court based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441. Dkt. 1.

Smith now moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim under Rule 12(b)(6). Dkt. 9. Stone asks the Court to grant jurisdictional discovery before he responds to Smith's motion.

## II.  Legal Standard

Rule 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. A court generally may not rule on the merits of a case without first determining

3

that it has personal jurisdiction over the parties. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007).

The plaintiff has the burden of establishing jurisdiction. *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 233 (5th Cir. 2016). If the court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a prima facie case of personal jurisdiction. *Id.* "Proof by a preponderance of the evidence is not required." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019) (quoting *Johnston v. Multidata Sys. Int'l Corp.* 523 F.3d 602, 609 (5th Cir. 2008)). In determining whether the plaintiff has presented a prima facie case of personal jurisdiction, the court "must accept the plaintiff's uncontroverted allegations, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Patterson*, 826 F.3d at 233.

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant if the state's long-arm statute permits an exercise of jurisdiction over that defendant and an exercise of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018); *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Because the requirements of the Texas long-arm statute are coextensive with the requirements of the Due Process Clause, the sole inquiry is whether the Court's exercise of personal jurisdiction over the defendant would be consistent with due process. *Sangha*, 882 F.3d at 101.

In order for personal jurisdiction to satisfy due process requirements, a plaintiff must show that (1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of "fair play and substantial

4

justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). A defendant's "minimum contacts" may give rise to either general or specific personal jurisdiction, depending on the nature of the suit and the defendant's relationship to the forum state. *Sangha*, 882 F.3d at 101. A court may assert general jurisdiction over non-resident defendants "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317). Specific jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Haliburton*, 921 F.3d at 539.

### III.   Analysis

Smith, a Florida resident, argues that the Court lacks both general and specific personal jurisdiction over him. Dkt. 9 at 4-7. In his motion for jurisdictional discovery, Stone states that, as an assignee of Myers' claims, he lacks knowledge of Smith's interactions with Myers. Dkt. 14. Stone seeks leave to serve three interrogatories and five requests for production on Smith, and also to depose him for one hour. *Id.* at 6. Smith opposes the motion, arguing that Stone has neither made a preliminary showing of personal jurisdiction nor identified what facts he expects to discover supporting jurisdiction. Dkt. 16 at 2-3. Alternatively, Smith asks that discovery be limited to "five interrogatories and five requests for production on his contacts with Texas." *Id.* at 4.

To support a motion for jurisdictional discovery, a plaintiff first must make "a preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). A preliminary showing does not require proof that personal jurisdiction exists, but "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts." *Id.* (citation omitted). The plaintiff must state what facts discovery is expected to uncover and how those facts would support personal jurisdiction. *Kelly v. Syria Shell Petroleum*

*Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000). If a plaintiff presents factual allegations "that suggest with reasonable particularity the possible existence of the requisite contacts, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Fielding*, 415 F.3d at 429. The district court has broad discretion to permit a party to conduct jurisdictional discovery. *Next Techs., Inc. v. ThermoGenisis, LLC*, 121 F. Supp. 3d 671, 676 (W.D. Tex. 2015).

Stone alleges that "NAPA agents, including Bennie Smith, advised Myers that the appropriate individuals were reviewing the claim. Yet, at no point did NAPA or Smith advise Myers that he needed to submit the claim in some different manner." Dkt. 1-2 ¶ 15. Stone further alleges that "Smith made representations to Myers" and is liable for fraud by non-disclosure for "conceal[ing] material facts from Myers" regarding the claims process. *Id.* ¶¶ 32, 34.

Stone has not made a preliminary showing of general jurisdiction over Smith. *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (stating that general jurisdiction is appropriate when "affiliations with the State are so 'continuous and systematic' as to render a party essentially 'at home in the forum State'") (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). Stone has, however, made a preliminary showing of specific jurisdiction by alleging facts suggesting with reasonable particularity the possible existence of contacts required to establish personal jurisdiction over Smith. If Smith's communications with Myers, a Texas resident, constitute fraud or misrepresentation, jurisdiction may be proper in this Court. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) (stating that specific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."). Therefore, Plaintiff may conduct discovery limited to Smith's contacts with Myers and Texas and exercise of specific jurisdiction over Smith.

## IV. Conclusion

**IT IS ORDERED** that Plaintiff's Motion for Jurisdictional Discovery and to Extend the Deadline to Respond to Defendant Bennie Smith's Motion to Dismiss (Dkt. 14) is **GRANTED**. Plaintiff may conduct jurisdictional discovery limited to a maximum of three interrogatories, five requests for admission, and a deposition of Smith no more than one hour in duration. All such discovery shall be completed **on or before May 2, 2022**. Plaintiff must propound all written discovery on or before April 1, 2022, to ensure that responses are served no later than May 2, 2022.

**SIGNED** on March 1, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE